Baldwin, J.
It cannot be doubted that a court under whose authority an inquest has been taken, with a view to the action of the court upon the subject of the enquiry, has the power to quash the inquisition for good cause shewn. Its authority to set aside the inquisition and to award a new writ is analogous to the supervision and control which it exercises in regard to the verdict of a jury upon a venire facias or a writ of enquiry. And as a motion for a new trial is addressed to the sound discretion of the court, it is equally so in relation to the motion to quash an inquisition. In either case, the court interposes where manifest injustice has been done by the decision of the jury; or without enquiry into the merits of that decision, where the jury or the successful party has been guilty of gross misconduct in the proceeding, affecting the purity of the administration of justice, or where the jury has been so constituted, without the default of the party complaining, as to render it improbable that a fair and impartial investigation has been had. The same general principles, therefore, must govern an application to set aside a verdict of a jury, whether that verdict has been rendered upon a trial in court, or upon an inquest in pais. And the force of an objection to the verdict, founded merely upon a defect in the constitution of the jury, must depend upon several considerations; the want of an opportunity to make the objection before the decision of the jury ; the effect of that decision upon the determination of the cause; and the weight of the objection itself.
When a jury is impannelled in court, the parties have an opportunity to challenge either the array or the polls; and if they do not avail themselves of it, the *464 court will not listen to objections to jurors after the ren» dition of their verdict, unless under very peculiar circumstances. But upon an inquest in the country, the right of challenge does not exist; and of course objections, whether to the array or the polls, cannot be made until after the return of the inquisition. On the other hand, a verdict rendered in court is conclusive upon the parties while it stands; whereas an inquisition made in the country may, under the peculiar law by which it is governed, be either conclusive, in the whole or in part, or merely evidence for the information of the court, and liable to be overcome or strengthened by other evidence. If an inquisition be conclusive on any material point, objections to the array or the polls, if sufficiently cogent, may be entertained upon a motion to quash ; though not such as would induce the court to set aside a verdict upon a venire facias, because the proper subjects of previous challenge. It does not follow, however, that the court will quash an inquisition for every objection which would have been a cause of even principal challenge upon a venire facias; for an important distinction arises from the consideration, that a challenge, when well taken, has the effect of preventing a vice in the constitution of the jury, and though it should be improperly sustained, can be productive of but little inconvenience; whereas the quashing an inquisition is necessarily attended with delay and expense, besides the hazard of annulling a decision of the jury correct upon the merits. It would therefore be no sufficient ground for quashing an inquisition, however conclusive in its character, that one of the jurors was a seventh cousin of one of the parties, or his steward or attorney, or of the same corporation with him, or “a witness named in the deed though these appear from the books to be causes of principal challenge, sufficient in themselves, and not submitted to the determination of triers, as is the case with challenges that go only to *465 the favour. The objection ought, I think, to be such as . , . . . to raise not merely a strong suspicion, but strong reason to believe that the juror acted under an improper bias, or that unfairness had been practised in the constitution of the jury; either of which might be inferred where one of the jurors was the son or the brother of the successful party, or had a pecuniary interest in the result. The rule, it seems to me, may be safely asserted, that an inquisition will not be quashed for objections to jurors which would not be good cause of principal challenge upon a venire facias ; but the converse of the proposition cannot, I think, be true, that whatever is good cause of principal challenge upon a venire facias is a fatal objection to an inquisition. A juror upon an inquest can no more be challenged after verdict than a juror upon a venire facias; and it surely cannot be true that the inquisition found may be challenged, because the party had not an opportunity to challenge the jurors who found it.
In the case before us, though the objections to some of the jurors might have furnished grounds of challenge, inasmuch as the evidence tends to shew decided expressions of opinion before they were sworn, in relation to the matter of enquiry; still I think the court, in the exercise of a sound discretion, ought to have overruled them upon the motion to quash the inquisition. It by no means follows that a juror was partial because he had expressed an opinion; for his belief may not have been the result of malice or prejudice, but of his own knowledge of the subject. Besides, the only evidence on this point is that of the very jurors themselves, introduced for the purpose of proving that they were not impartial at the time they were sworn. It is obvious that such evidence, if at all admissible, ought to be received with great caution and circumspection, by reason of the difficulty of contradicting it, and the encouragement which it holds out to tampering with jurors *466 after the rendition of their verdict. Nor ought it to be at a|i garbled, as it would be in this case, by rejecting (what might perhaps be disregarded upon an examinaon the voir dire with a view to a challenge) the emphatic declarations of the witnesses, that they stood, when called to be sworn on the jury, uninfluenced by what had occurred, and prepared to render an impartial verdict.
If therefore the inquisition were conclusive in its effect, the evidence just noticed would, in my opinion, furnish no good reason for quashing it. But the whole ground of objection is removed when we look to the character of the inquisition, which is in no wise conclusive. The proceeding is under the act concerning ferries, 2 R. C. 261. by which the duty of the jury is confined to the question whether public convenience will result from the establishment of the ferry applied for, and the merits of the application are to be decided by the court, upon the inquisition, and any other evidence. which may be offered. The finding of the jury, therefore, in such a case is merely evidence, and the weight of it, under all the circumstances, a matter for the discretion of the court. There may be cases of corruption or unfairness in the constitution of the jury, calling upon the court to quash the inquisition as a decisive mark of its reprobation ; but minor objections, pointing only to a want of qualification or a liability to prejudice on the part of one or more of the jurors, should be directed, not against the competency, but the credibility of their verdict.
Hunter v. Matthews is not an authority to rule this case. It was there held that an inquisition upon an ad quod damnum, on an application to erect a mill and dam, was properly quashed, on the ground that two of the jurors had been of the jury which had found a former inquisition upon the same matter of controversy. The proceeding there was had under the act concerning *467 mills &c. 2 R. C. 225. by the provisions of which the * * inquisition is conclusive as to the value of the acre of land located for the abutment of the dam, and the damage to the proprietors above and below; and is also conclusive against the applicant, where it finds that the mansion house &c. of any proprietor will be overflowed, or the health of the neighbours annoyed. And the decision in Hunter v. Matthews was founded upon the conclusive effect of the inquisition.
My opinion is, that the county court erred in quashing the inquisition found by the jury, and also erred in quashing the other proceedings. The objection that notice of the application for the ferry was not given according to the requisitions of the statute, and the further objection that no public road had been established through the lands of the applicant, from and to which the ferry was proposed to be established, are wholly unwarranted, if not contradicted, by the record, and would seem to be founded upon the erroneous idea that the evidence of . those facts ought to have been spread upon the record, though the case was never heard before the court upon the question whether the ferry ought to be established, which was arrested by the successful motion to quash the proceedings.—The judgment of the circuit court reversing that of the county court seems to me perfectly correct.
Allen, J.
In Hunter v. Matthews, two of the jurors had been of the jury which found an inquisition on a former writ of ad quod damnum in the same cause. This, according to the authorities, was a cause of principal challenge ; and for that reason, and because the inquisition in a mill case was in some respects conclusive upon the rights of both parties, I was of opinion that the inquisition there should be quashed. Neither of those reasons applies to the present case. The objection to the jurors did not constitute a cause of principal *468 challenge : it concluded to the favour; in which case Coke says, “ that in this or other like cases he that takelh the challenge must shew the record, if he will have it take place as a principal challenge; otherwise he must ferred that a cause of principal challenge, growing out of the act of the juror, depends not so much on the character of the objection as on the kind of proof. The fact of his having rendered a former verdict in the same cause, and the influence it would be likely to exert in a subsequent trial, could not be affected, whether proved by the record, or otherwise : yet in the latter case the challenge concludes to the favour, and is addressed to the discretion of the court. See, upon this subject, Co. Litt. 157 b. 3 Thomas’s Co. Litt. 479. and 3 Black. Comm. 363. It is not said in either of these authorities that the expression of an opinion constitutes a cause of principal challenge; and from the instances put, and more especially from the remark of lord Coke cited above, it is clear that the objection concludes to the favour. The same doctrine is to be found in 21 Viner’s Abr. 266. and 2 Rolle’s Abr. 657. court, in the exercise of a sound legal discretion, must determine upon the validity of the objection. Even where the juror has given a former verdict, lord conclude to the favour.” From which it may be in-
Viewing the objection here as constituting a challenge concluding to the favour, I think the court should have overruled it, after the inquisition had been found. According to the uniform course of decision, the testimony of jurors going to impeach their own verdict, if admissible, should be received with great caution. If such testimony be resorted to, full weight should be given to the whole of it. Here the jurors declare that their opinions previously formed had no influence on their finding.
But there is another reason why, in this peculiar case, there can be no propriety in quashing the inqui *469 silion. It concludes nothing. It is at best but the opinion of twelve men, given under oath, as to the question of public convenience. The court, upon that as well as the other evidence, éstablishes the ferry or rejects the application. In a mill case, the finding of the inquisition that the health of the neighbourhood will be annoyed is conclusive; and so in respect to the quantum of damages for the land condemned. In these respects it differs widely from an inquisition of the kind under consideration.
I think therefore that the county court erred in quashing the inquisition, and that the judgment of the circuit court reversing that of the county court should be affirmed.
The other judges concurring, judgment of circuit court reversing that of county court affirmed.